STATE of Minnesota, Respondent,

v.

Daniel ZGODAVA, Appellant.

No. C8–85–1710.

Court of Appeals of Minnesota.

April 1, 1986.

Review Denied May 16, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Anne E. Peek, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Heard, considered and decided by WOZNIAK, P.J., and LANSING and HUSPENI, JJ.

## OPINION

LANSING, Judge.

A jury convicted Daniel Zgodava of receiving stolen property, *see* Minn.Stat. § 609.53, subd. 1(1); § 609.05. On appeal Zgodava contends the admission of his military discharge papers to show he lived in the place where the stolen goods were found was prejudicial error because the papers referred to past criminal activity. He also contends an instruction allowing the jury to convict him if he "had reason to know" the goods were stolen impermissibly dilutes the constitutional requirement of proof beyond a reasonable doubt and that the evidence is insufficient to sustain his conviction. We affirm.

## FACTS

Early in 1984, the Hennepin County Sheriff's Department began investigating credit card forgeries and the return of possibly stolen merchandise for cash refunds at local department stores. Zgodava's name appeared on numerous cash refund slips for sizeable dollar amounts within one month. The refund slips listed 3432 Park Avenue, Minneapolis, as his address. The officers believed that Zgodava and his girlfriend, Shelly Hill (who was also a suspect in the investigation), were living at 3432 Park Avenue, a single-family dwelling owned by Zgodava's father.

The sheriff's department began surveillance of Zgodava on March 25, 1984. The officers observed that Zgodava's car was parked at 3432 Park Avenue during the surveillance period, not at 3817 10th Avenue, the address listed on the vehicle registration form. On April 2, 1984, Detective Allen Anderson obtained and executed a search warrant for 3432 Park Avenue.

The officers seized a number of items from a second-floor bedroom and kitchenette, including a videocassette recorder (VCR) stolen three days earlier; a television stolen in November 1983; and a cassette deck and receiver from which the serial numbers had been removed. From the bedroom where the television and stereo equipment were found, the officers also seized Zgodava's current Minnesota driver's license listing 3432 Park Avenue as his address; a recent Target-Dayton's bill addressed to him at 3432 Park Avenue; and two letters with recent postmarks addressed to him at 3432 Park Avenue. From the kitchenette where the VCR was found, the officers seized a briefcase that contained miscellaneous items including papers documenting Zgodava's discharge from the military in 1972.

Zgodava was charged with receiving stolen property in violation of Minn.Stat. § 609.53, subd. 1(1), and § 609.05. At trial the briefcase and its contents were admitted to show that Zgodava lived at 3432 Park Avenue. Over Zgodava's objection, the jury was instructed that he could be convicted if the jury found he possessed stolen property "knowing or having reason to know the property was stolen." The jury returned a verdict of guilty, and the trial court sentenced Zgodava to a term of 57 months. He appeals from the judgment of conviction.

## ISSUES

1. Did the trial court abuse its discretion in admitting appellant's military discharge papers to show he lived at 3432 Park Avenue?

2. Did the trial court properly instruct the jury on the elements of receiving stolen property?

3. Is the evidence sufficient to sustain appellant's conviction of receiving stolen property?

## ANALYSIS

### I

Zgodava's briefcase was admitted at trial to show that he was living at 3432 Park Avenue when the stolen goods were found there. The briefcase contained a number of pay stubs from 1979 and 1980, income tax forms for 1980, a coin collection, photographs, insurance brochures, his son's birth certificate, a notebook, and an envelope of military records. Among the papers in the envelope were two memoranda from an army personnel officer recommending that Zgodava be retained in the service despite his absence without leave (AWOL) on two occasions. His clearance record lists as authority for his departure that he was "undesirable."

The trial court ruled the papers admissible, because Zgodava denied living at his father's home and the papers were probative on that issue. The court denied defense counsel's request to excise the references to Zgodava being AWOL, saying those references might be embarrassing but were not prejudicial. Zgodava claims the trial court's admission of these papers was prejudicial error. We disagree.

Although it would have been better to excise those few sentences referring to Zgodava being AWOL, the trial court did not clearly abuse its discretion in admitting the papers as they were. The prosecution did not use the AWOL incidents as *Spreigl* evidence, but only used the papers to show Zgodava was living there. The jury heard no reference to Zgodava being AWOL or the circumstances of his discharge. The papers were among many others in an envelope, inside the briefcase, which was filled with other papers and personal effects. The admission of the military discharge papers was not prejudicial error.

### II

Zgodava argues the trial court's instruction that the jury could find him guilty if he "had reason to know" the property was stolen resulted in reversible error. He argues that this instruction unconstitutionally dilutes the State's burden of proving his guilt beyond a reasonable doubt and that a finding of actual knowledge is necessary to support his conviction.

We rejected this argument in *State v. Peterson*, 375 N.W.2d 93, 96 (Minn.Ct.App. 1985). *See also State v. True*, 378 N.W.2d 45 (Minn.Ct.App.1985). The trial court properly instructed the jury that it could convict Zgovada if he knew or had reason to know the property was stolen.

### III

Zgodava claims the evidence is insufficient to sustain his conviction of receiving stolen property. Minn.Stat. § 609.-53, subd. 1, applies to any person who "receives, possesses, transfers, buys, or conceals any stolen property * * *, knowing or having reason to know the property was stolen."

Zgodava was not the only occupant of the house. His father, brother, sister, and two others were living there and had access to the stolen property. To prove that Zgodava constructively possessed the stolen goods, the State therefore had to show a strong probability, inferable from other evidence, that Zgodava consciously exercised dominion and control over the stolen items. *See State v. Wiley*, 366 N.W.2d 265, 270 (Minn.1985); *State v. Florine*, 303 Minn. 103, 226 N.W.2d 609 (1975).

Zgodava's father and Shelly Hill testified that Zgodava did not live there. In contrast, three detectives testified that

Zgodava appeared to be living at 3432 Park Avenue for more than a week before the search. He received mail, including current bills, at that address. He listed that address on refund slips in February 1984, one month before the search. His current driver's license listed that address.

In addition, the State showed that Zgodava's mail and driver's license were found in the bedroom containing the stolen television and the stereo equipment. The detectives also observed men's clothing in that bedroom. Zgodava's briefcase was found in the kitchen, where the stolen VCR was found. The VCR was in a garbage bag on top of the refrigerator. Shelly Hill testified that she occupied the bedroom where the television was found; that she purchased the television, VCR, and stereo equipment; and that Zgodava had no knowledge the items were stolen. Shelly Hill was impeached with evidence that she had pleaded guilty to four felony charges of aggravated forgery, and in exchange a charge of receiving stolen property was dismissed. Therefore, she had nothing to lose by claiming responsibility for possessing the items.

In reviewing the sufficiency of the evidence, we are limited to determining whether a jury could reasonably conclude the defendant was guilty of the offense charged. *See State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981). The evidence must be viewed in the light most favorable to the prosecution, and we must assume the jury believed the State's witnesses and disbelieved any contrary evidence. *Id.* On this record a jury could reasonably find that Zgodava constructively possessed the stolen goods with knowledge that they were stolen. The evidence is sufficient to sustain his conviction.

### DECISION

Appellant's conviction is affirmed in all respects.

Affirmed.